# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| SHARON ANN BIVENS, ) | |
| Plaintiff, ) | |
| v. ) | NO. 15-3183 |
| NANCY A. BERRYHILL, Acting ) Commissioner of Social Security, ) | |
| Defendant. ) | |

## **OPINION**

RICHARD MILLS, U.S. District Judge:

Plaintiff seeks review–pursuant to 42 U.S.C. § 405(g)–of the final decision of the Commissioner of Social Security.

Pending are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Affirmance.

Summary Affirmance allowed.

### I. BACKGROUND

Plaintiff Sharon Ann Bivens is 61 and has extensive education and training in the field of nursing. She has worked as a Nurse in the Neonatal Unit at St. John's Hospital and as a traveling Neonatal Nurse, where she went to different hospitals that had nursing shortages.

The Plaintiff alleged disability due to: blindness in her left eye; neck injury, depression, cancer survivor with permanent colostomy; bladder deterioration; arthritis systemically especially in the spinal vertebra, and degenerative spine. The Plaintiff alleges an onset date of November 16, 2011, when she was involved in a car accident. The Plaintiff complained of moderate neck pain and arm pain after the accident. She was discharged the same day. She returned to the hospital later that day and claimed that additional tests were necessary after she believed she felt whiplash. Computerized tomography ("CT") of the head and cervical spine computerized tomography scan ("C-spine") tests were negative.

At a hearing before the administrative law judge, the Plaintiff testified she is 5'5" and weighed 208 pounds. She lives with her husband and adult daughter. The Plaintiff helps to watch her grandchildren, who were 7 and 3 at the time. She is able to go up and downstairs to the basement by using the handrails two to three times a week. The Plaintiff testified to having trouble lifting a basket of clothes but is able to help with laundry by folding clothes. She is able to use a broom to sweep the house but has difficulty mopping the floors or stooping down to clean. The Plaintiff's husband does most of the shopping though she sometimes accompanies him and uses the shopping cart for support. The Plaintiff has an unrestricted driver's license and drives two to three times per week.

The Plaintiff testified she began working in neonatal nursing in 1977. She lost vision in her left eye approximately 30 years prior to her alleged onset date. The eye became infected and she underwent surgery to remove the lens in the left eye. The eye now has too much scar tissue to allow a lens implant to improve eyesight. The Plaintiff maintains some peripheral vision in her left eye. Her body "compensated" for the loss of vision in her left eye and she has always been able to work. The Plaintiff was able to work despite suffering from chronic lower back pain since her pregnancy about 30 years before her alleged onset date.

The Plaintiff also testified she suffered from colorectal cancer in 2002. She had surgery and now uses a colostomy bag. While working at St. John's Hospital, the Plaintiff required 5 to 15 minutes to change her colostomy bag and change clothes. Throughout a 12-hour shift, she typically only needed to change the colostomy bag once.

At the hearing, Vocational Expert James Lanier identified the Plaintiff's past relevant work as a general duty nurse which is classified as skilled, medium work. The ALJ inquired about a claimant who: is limited to light work; can never climb ladders, ropes or scaffolds; can crawl no more than frequently; and must avoid concentrated exposures to hazards due to left eye blindness. Such a person could not perform the Plaintiff's past nursing job but could do the jobs of pharmaceutical

3

technician (1,060 regional jobs/38,040 national jobs) and a phlebotomist (7,620 regional jobs/119,670 national jobs). The vocational expert classified these jobs as semi-skilled light work and addressed the reaching and vision entailed by the positions. The vocational expert opined that a person who required two unscheduled 15-minute breaks in addition to regular breaks could not perform these jobs.

The Plaintiff's application for Social Security Disability was denied at the initial level and on reconsideration.

In a Decision entered on January 31, 2014, Administrative Law Judge Robert H. Schwartz found that Plaintiff has the following severe impairments: cervical degenerative disc disease, status post-surgery, loss of vision in the left eye, a history of treatment for colorectal cancer with colostomy and obesity. However, he found that none of the impairments or combination of impairments meets or medically equals the severity of one of the listed impairments. ALJ Schwartz found that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Moreover, the Plaintiff can never climb ladders, ropes, or scaffolds and she can crawl no more than frequently. The ALJ also found that she must avoid concentrated exposure to hazards due to impaired depth perception. At step five, the ALJ found that Plaintiff had acquired work skills from past relevant work that are transferable and someone of Plaintiff's age, education and residual

4

functional capacity could do jobs such as pharmaceutical technician and phlebotomist.

On April 15, 2015, the Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff filed this timely lawsuit pursuant to 42 U.S.C. § 405(g).

The Plaintiff alleges the ALJ erred in as follows: (1) by not giving adequate weight to her alleged mental functional limitations, which are supported by the consultative exam and her treating physician, in the hypothetical posed to the vocational consultant which should have limited her to simple, routine, repetitive tasks; (2) ignoring the flawed ophthalomogical examination performed by an internist, who was neither equipped nor qualified to provide an examination consistent with the program standards; (3) ignoring the objective medical evidence of the Plaintiff's back which supported her allegations of obesity as a limiting factor of her ability to function; and (4) failing to address or question the vocational examiner as to the Plaintiff's testimony regarding having functional restrictions due to the colostomy bag and urinary incontinence and the need to take unscheduled breaks.

## II. DISCUSSION

A. Standard of review

To establish disability, the Plaintiff must demonstrate that she had a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that prevented her from performing substantial gainful activity. When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. See Schaaf v. Astrue, 602 F.3d 869, 874 (7th Cir. 2010). The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted). Although the Court's task is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." *Id*. at 856-57.

B. ALJ's consideration of mental functional limitations

The Plaintiff alleges the ALJ erred in failing to give adequate weight to her mental functional limitations which, she claims, are supported by the consultative exam and her treating physician, in the hypothetical posed to the vocational examiner which should have limited her to simple, routine and repetitive tasks.

The Plaintiff contends the ALJ did not properly weigh the findings of Delores Trello, Psy. D. Dr. Trello performed a mental status examination on August 15, 2015, and diagnosed the Plaintiff with depression, mood disorder and generalized anxiety disorder and found her Global Assessment of Functioning to be 50.[1] This would be expected to produce limitations in functioning. Although her medication might suppress some symptoms, the Plaintiff claims the medication does not eliminate the impairment but merely makes the medically determinable impairment more tolerable. Accordingly, the Plaintiff contends the appropriate conclusion would have been to limit her to unskilled work.

The ALJ cited Dr. Trello's objective findings that were inconsistent with the low GAF score and found that Dr. Trello "did not explain her conclusion." Dr. Trello noted that Plaintiff "had no deficit" in memory and had no difficulty performing simple calculations, and was "pleasant" with no sign of a "thought disorder." Moreover, the Plaintiff performed "well enough" throughout the Mental Health Examination. The Plaintiff completed serial sevens "backwards from 100 without error," she named five large cities and five famous people, and she "provided

---

[1] A GAF score of 41 to 50 reflects "serious symptoms . . . or serious difficulty in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed., Text Rev. 2000).

solutions" to hypothetical questions posed to her. The Court finds that these tests support the ALJ's conclusions about the Plaintiff's mental ability to work. *See* 20 C.F.R., Part 404, Subpart P, App. 1 § 12.00(C)(3).

Additionally, the ALJ's findings are further supported by the fact that no doctor or medical source opined that Plaintiff's was limited to unskilled work. State Agency Consultant Thomas Low, PhD, opined that Plaintiff's mental limitations were not severe. Dr. Low reached this conclusion based on the medical record, including Dr. Trello's opinion. Richard Bilinsky, M.D., did not limit the Plaintiff to unskilled work due to her impairments. Lenore Gonzalez, M.D., reached the same conclusion. Additionally, Dr. Trello noted that Plaintiff "did well enough on her mental status examination and seems capable of handling funds in her own best interests." Dr. Trello did not conclude that Plaintiff was limited to unskilled work. Significantly, no doctor determined that Plaintiff was subject to greater limitations than found by the ALJ.

The regulations define semi-skilled work as work "which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b). The Plaintiff listed her hobbies as reading, computer work (including puzzles, checking email and shopping), watching TV and watching sports. The Plaintiff's daily activities support the conclusion that Plaintiff–like many other people from all

8

walks of life who suffer from depression–is capable of semi-skilled work.

The ALJ was also entitled to rely on the effectiveness of the Plaintiff's medication in considering her mental impairments. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (ALJ properly relied on psychologist's opinion that medication controlled the impairment).

For all of these reasons, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff can handle the mental demands and retains the ability to perform semi-skilled work.

### C. ALJ's reliance on consultative examination

The Plaintiff alleges the ALJ ignored the flawed ophthalomogical examination performed by an internist, who was neither equipped nor qualified to provide an examination consistent with the program standards.

The Plaintiff is blind in her left eye. A consultative examination was scheduled to evaluate the Plaintiff's vision in her right eye. The Plaintiff was seen by an internist, Vittal Chapa, M.D., on August 22, 2012. In the Summary and Decision, Dr. Chapa noted, "She has loss of vision in the left eye. Visual fields were normal to gross confrontation in the right eye." The Plaintiff alleges there was no evaluation as to the remaining vision in her right eye and what restrictions there may have been in that eye.

The regulations authorize the agency to purchase a consultative examination from a qualified medical source. *See* 20 C.F.R. § 404.1519a. A "qualified" medical source must: be currently licensed in the State, have the training and experience to perform the type of examination or test requested, and have the equipment "to prove an adequate assessment." 20 C.F.R. § 404.1519g. The Court has no basis to conclude that Dr. Chapa was "neither equipped nor qualified" to perform the consultative examination.

The visual acuity test conducted by Dr. Chapa showed the Plaintiff had 20/20 vision in her right eye. She could not see any letters on the vision chart with her left eye. Dr. Chapa noted her left pupil was deformed and did not react to light; extraocular muscles were intact; there was no nystagmus; and there was no jaundice or anemia. The Court concludes that Dr. Chapa had the requisite training and experience to perform a vision test as an internist. He did not need specific training as an ophthalmologist. Additionally, the Commissioner notes that Plaintiff did not object to Dr. Chapa as a medical source until this proceeding.

The Plaintiff claims that both a phlebotomist and pharmacy technician require occasional accommodation and frequent near acuity to perform essential functions of that job. She would be unable to perform those jobs. The Plaintiff alleges the vocational expert was not able to explain the machinery or equipment that would be

used by a phlebotomist and pharmacy technician in performing their duties.

The Plaintiff contends that the ALJ's failure to pose an adequate functional hypothesis to the vocational consultant is an error of law which can only be cured by remanding to the ALJ for a proper consideration of her visual acuity and field of vision.

The Court further concludes there is no evidence that Plaintiff's vision would preclude her from working. The Plaintiff testified that her vision did not restrict her throughout her previous employment because her body "just compensated" for her eyesight, which she lost in the first few years of her nursing career. Additionally, the Plaintiff's unrestricted driver's license demonstrates an ability to function even with restricted eyesight in her left eye.

Based on the foregoing, the ALJ did not err in considering Dr. Chapa's consultative examination.

### D. ALJ's consideration of Plaintiff's obesity

The Plaintiff claims the ALJ ignored the objective medical evidence regarding her back which supported her allegations of obesity as a limiting factor of the Plaintiff's ability to function. There was a diagnosis of "Multilevel Degenerative Changes with Osteophyte Complexes, and some left-sided narrowing at C5-6." Further evaluation established a "C5-6 Disc Body Bulge with left Paracentric Disc

Protrusion and a Bulging and Osteophyte Complex at C4-5 and C6-7." This led to "Mild to Moderate Stenosis." An EMG also established Nerve Root Irritation. A surgical fixation at C5-6 was performed. The Plaintiff alleges that, despite surgery, it is reasonable that her conditions would continue to cause pain as well as limitation of motion.

Additionally, the Plaintiff weighed 208 pounds and had a Body Mass Index (BMI) of 34.6. at the time of the hearing. A BMI at this number falls within the range associated with obesity. The effects and consequences of obesity must be taken into consideration when determining her residual functional capacity. The Plaintiff alleges her obesity gives credibility to her statements of limitation in context of her back pain.

The Plaintiff alleges the ALJ's boilerplate language did not sufficiently address her statements of back pain and limitations of lifting and carrying. The ALJ noted the Plaintiff's "obesity is a severe impairment" and considered its "impact on her ability to ambulate and her other body systems" "at each step of the sequential process." At step three of the sequential evaluation process, the ALJ explained that Plaintiff's obesity "is not attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in any musculoskeletal, respiratory, or cardiovascular" system affected by obesity. The ALJ also "considered

the impact obesity has on [Plaintiff's] limitation of function." The ALJ concluded that Plaintiff's "obesity contributes to [her] functional limitations but does not result in limitations in excess of the residual functional capacity stated herein." The ALJ further noted that Plaintiff is able to get on and off examination tables without assistance, which suggests she is capable of performing routine and necessary physical activity.

The Court concludes that the ALJ's consideration of obesity was sufficient. The ALJ also relied on the medical opinions of examining physician and state agency medical consultants who had considered the Plaintiff's obesity. Dr. Chapa had observed that Plaintiff appeared "overweight" but "had no difficulty" getting on and off the examination table and had a "normal" gait. The ALJ relied on lifting restrictions that the treating and reviewing physicians had suggested. All these physicians were aware of the Plaintiff's obesity. Therefore, the ALJ at least indirectly considered the Plaintiff's obesity by adopting the limitations of her treating and reviewing physicians who were clearly aware of the Plaintiff's obesity.

Additionally, the Court notes that Plaintiff has not discussed how obesity has worsened her underlying conditions. An ALJ's "failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work." *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015).

13

The ALJ reviewed the medical reports of various doctors who noted the Plaintiff's obesity. The Court concludes that any failure by the ALJ to properly assess the Plaintiff's obesity is harmless.

### E. ALJ's consideration of colostomy bag and incontinence

The Plaintiff notes that although she testified to having functional restrictions due to the colostomy bag and urinary incontinence and the need to take unscheduled breaks, the ALJ did not address this evidence in his Decision and did not pose functional limitations in the hypothetical to the vocational consultant, thereby rendering any vocational analysis by the vocational consultant meaningless. The Plaintiff further asserts that a flawed hypothetical requires a remand.

The Plaintiff underwent chemotherapy and radiation following a diagnosis of colorectal cancer. She also has a bowel resection and permanent colostomy. The Plaintiff testified she needed to change her clothes during shifts as a result. Her previous employer accommodated her medical condition. However, the Plaintiff alleges that the ALJ did not explain why he discounted her testimony that she needed to take unscheduled breaks. The vocational expert when questioned by the ALJ stated that an extra fifteen minute unscheduled break would not be tolerated in competitive employment.

An ALJ need only incorporate into hypotheticals those impairments and

14

limitations that are determined to be credible. *See Schmidt v. Astrue*, 496 F.3d 833, 845-46 (7th Cir. 2007). The Court concludes that the hypothetical accounted for the impairments in the residual functional capacity based on the evidence presented. The issue thus becomes whether the residual functional capacity is inadequate by excluding limitations for the Plaintiff's incontinence.

The Plaintiff testified that her colostomy bag did not have a major effect in her previous employment. At her most recent job, she estimated that it took "5 or 10 minutes" to change her colostomy bag once a day throughout a 12-hour shift. The Plaintiff waited for "a break in the action" to change the colostomy bag so that her coworkers did not have to cover for her. Accordingly, there is substantial evidence the Plaintiff would not need numerous, unscheduled breaks.

There is no basis in the record for finding that Plaintiff's incontinence worsened after her last employment. The ALJ's Decision noted that Plaintiff had experienced urinary incontinence "for many years" while working. Moreover, she "generally reported no new issues with her bowels or bladder." During her last employment, the Plaintiff worked lengthy shifts while accommodating for her colostomy bag without requiring disruptive and constant breaks. Accordingly, evidence in the record supports the ALJ's finding that Plaintiff's incontinence did not worsen after her last employment.

Upon reviewing the record, the Court concludes that the residual functional capacity need not have included a provision for unscheduled breaks. Accordingly, the ALJ reasonably determined that Plaintiff would not need frequent unscheduled breaks.

### III. CONCLUSION

Based on the foregoing, the Court concludes that the ALJ's Decision is supported by substantial evidence.

<u>Ergo</u>, the Plaintiff's Motion for Summary Judgment [d/e 11] is DENIED.

The Clerk will substitute Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration, as the Defendant in this case.

The Clerk will enter a Judgment affirming the decision of the Commissioner of Social Security.

ENTER: September 29, 2017

      FOR THE COURT:

      /s/ *Richard Mills*
      Richard Mills
      United States District Judge